IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DARSHAN MEHTA<br><br>v.<br><br>LYNDA MADDOX | Case No. 17-cv-1090 |

## COMPLAINT WITH JURY DEMAND

COMES NOW, PLAINTIFF DARSHAN MEHTA ("Plaintiff" or "Mehta") and brings this action against DEFENDANT LYNDA MADDOX ("Defendant" or "Lynda"), and alleges common law claims of conspiracy, fraud, and trespass, and violations of the Computer Fraud and Abuse Act and the Stored Communications Act. Plaintiff seeks damages, attorneys' fees, disgorgement and/or restitution of any revenue earned by Defendant from her unlawful activities, and injunctive or any other equitable relief.

## PARTIES

1.      Plaintiff Darshan Mehta is an adult individual residing at 9827 Lake Meadow Court, Burke, Virginia 22015 and is the estranged husband of Defendant.

2.      Defendant Lynda Maddox is an adult individual residing at 2010 Hillyer Place NW, Washington, D.C. 20009.

## JURISDICTION

3.      This Court has original subject matter jurisdiction over Plaintiff Mehta's claims for violations of the Computer Fraud and Abuse Act under 18 U.S.C. § 1030 *et seq.* and violations of the Stored Communications Protection Act under 18 U.S.C. § 2701 *et seq.* pursuant to 28 U.S.C. § 1331.

4.     This Court has supplemental jurisdiction over Plaintiff Mehta's claims arising under the laws of the District of Columbia pursuant to 28 U.S.C. § 1367(a) because these claims are so related to the claims within the bounds of the original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5.     This Court has personal jurisdiction over Defendant pursuant to D.C. Code § 13-422 and Rule 4(k)(1)(A), Fed. R. Civ. P., which vest this Court with personal jurisdiction over residents of the District of Columbia.

6.     Defendant is a resident of the District of Columbia.

<u>VENUE</u>

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and/or 28 U.S.C. § 1391(b)(2), as Defendant is a resident of the District of Columbia and/or a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

<u>FACTS COMMON TO ALL CLAIMS</u>

8.     Plaintiff and Defendant began a romantic relationship in or around 1988.

9.     Plaintiff and Defendant eventually married.

10.    Plaintiff and Defendant were in a relationship for over twenty-eight years.

11.    On or around Sunday, October 9, 2016, Plaintiff and Defendant separated.

12.    At the present time, Plaintiff does not believe that any hope for reconciliation between himself and Defendant exists, and expects divorce proceedings to begin in the near future.

13.    After Plaintiff and Defendant separated, Defendant with the assistance of her brother, Donald Maddox ("Donald"), began to unlawfully access Plaintiff's online, electronic, and/or financial accounts, gathering unauthorized information about and tracking the movements of Plaintiff.

14.     Beginning on or around October 12, 2016, Plaintiff began to receive security alerts or notices from many of his online, electronic, and/or financial accounts; the alerts notified Plaintiff of the attempts of an unauthorized user or users to access the accounts, change information in the accounts, and/or alter the security credentials associated with the accounts.

**Defendant's Unlawful Access of Plaintiff's AT&T Account – October 2016**

15.     Plaintiff is the owner of and sole individual with lawful access to an AT&T account in his name. *See* Exhibit No. 1.

16.     Plaintiff has been the owner of and sole individual with lawful access to said AT&T account since he opened it in or around 1991. *Id.*

17.     Plaintiff opened the AT&T account and initially associated only two telephone numbers with it. *Id.*

18.     Over time, Plaintiff added additional telephone numbers to the AT&T account. *Id.*

19.     When Plaintiff moved after the separation from Defendant, Plaintiff also changed the address associated with his AT&T account to his new address in Burke, Virginia. *Id.*

20.     On or around October 12, 2016, at 4:26AM, Plaintiff received an email from AT&T; all times are in Eastern Standard Time unless otherwise noted. *See* Exhibit No. 2.

21.     The email referenced a password change to Plaintiff's AT&T account that he was unaware of and had not initiated. *Id.*

22.     Plaintiff subsequently became concerned Defendant was responsible for the password change to Plaintiff's AT&T account.

23.     Upon information and belief, Defendant was responsible for the aforementioned password change in Plaintiff's AT&T account.

24.     Upon information and belief, Defendant and Donald were physically together at an address in Gleneden Beach, Oregon, believed to be 128 East Bay Point Road, when they initiated the password change in Plaintiff's AT&T account. *See* Exhibit No. 3.

25.     Acting upon this belief and/or knowledge of Defendant and Donald's whereabouts, on or around October 12, 2016, at 4:33AM (1:33AM PST), Plaintiff contacted the Office of the Sheriff in Newport, Oregon. *Id*.

26.     Plaintiff requested that an officer be dispatched to the Gleneden Beach location. *Id*.

27.     On or about October 12, 2016, at 5:29AM (2:29AM PST), the Office of the Sheriff in Newport, Oregon, confirmed Defendant's presence with Donald at the location. *Id*.

28.     On or around October 12, 2016, at 4:51AM, Plaintiff received a second alert from AT&T. *See* Exhibit No. 4.

29.     The alert stated that Plaintiff's AT&T account's settings had been altered, with a change made to Plaintiff's security questions that Plaintiff was unaware of and had not initiated. *Id*.

30.     Upon information and belief, Defendant was responsible for initiating and ultimately changing the security questions associated with Plaintiff's AT&T account.

31.     Upon information and belief, Defendant unlawfully accessed Plaintiff's AT&T account, without the necessary authorization, with the goal of depriving Plaintiff of control over and access to the account.

32.     Upon information and belief, Defendant unlawfully accessed many various records in Plaintiff's AT&T account, such as the telephone logs showing the telephone numbers that had placed calls to Plaintiff as well as the telephone numbers to which Plaintiff had himself placed calls.

33.     Upon information and belief, Defendant unlawfully accessed Plaintiff's AT&T account using an internet connection provided by Charter Communications.

34.     Upon information and belief, both AT&T and Charter Communications will have records corroborating the allegations set forth herein, including but not limited to internet protocol ["IP"] addresses, media access control ["MAC"] addresses, timestamp information, and geolocation of the internet capable devices that were used to unlawfully access Plaintiff's AT&T account.

35.     Upon information and belief, security footage showing the Gleneden Beach, Oregon property and proving Defendant's presence at that location on the date in question is likely to be available.

36.     The day following Defendant's unlawful access of Plaintiff's AT&T account, Plaintiff was forced to prove his identity and ownership of the account, in person, at an AT&T store by showing a valid photo ID.

37.     It was only through these steps that Plaintiff was able to regain control of his account.

38.     While present in the physical AT&T location, Plaintiff increased the security measures on his AT&T account by changing the passcode and doubling its length from four digits to eight.

**Defendant's Unlawful Access of Plaintiff's Email Account– October 2016**

39.     On or around October 10, 2016, through October 15, 2016, Plaintiff was unable to access his personal email account provided by George Washington University ("GWU"), along with all of the messages stored therein.

40.     Plaintiff's personal email account provided by GWU has a gwu.edu domain name.

41.     Consistent with the practice of many email providers, GWU did not formally notify Plaintiff that the password associated with his personal email account had been changed.

42.     Plaintiff only discovered that the password associated with his personal email account had been changed when he attempted to log in and was denied access.

43.     Upon information and belief, Defendant was responsible for the aforementioned password change in Plaintiff's personal email account.

44.     Plaintiff was forced to contact GWU's Information Technology ["IT"] support staff in order to reset the password of his email account and regain control. *See* Exhibit No. 5.

45.     Upon information and belief, GWU will have electronic records indicating Defendant's unlawful access of Plaintiff's personal email account, including but not limited to, emails that were sent via the account that were not initiated by Plaintiff, IP addresses, MAC addresses, timestamp information, and geolocation of the internet capable devices that were used to unlawfully access Plaintiff's personal email account. *Id.*

**Defendant's Unlawful Access of Plaintiff's iCloud Account – October 2016**

46.     Upon information and belief, on or around October 10, 2016, through October 15, 2016, Defendant unlawfully compromised and accessed Plaintiff's iCloud account, as provided by Apple, Inc. ["Apple"].

47.     Upon information and belief, Plaintiff's iCloud account stores duplicates of text messages sent to and from Plaintiff's mobile telephone.

48.     Upon information and belief, Defendant was able to and did in fact access logs of Plaintiff's text messages when she gained access to his iCloud account.

49.     Upon information and belief, Defendant was able to and did in fact access logs cataloguing Plaintiff's personal matters as well as the history of his physical whereabouts.

50.     Upon information and belief, Defendant learned of Plaintiff's contact and communications with an attorney, Jake Bournazian, through her unlawful access of Plaintiff's iCloud account, AT&T access logs and iCloud address book.

51.     Attorney Bournazian had been engaged to work on matters relating to both Plaintiff and Defendant in the past, although Defendant had never before contacted him directly.

52.     On or about October 9, 2016, through October 15, 2016, Plaintiff had communicated with Attorney Bournazian.

53.     Upon information and belief and following Defendant's unlawful access of Plaintiff's AT&T and iCloud accounts, Defendant telephoned Attorney Bournazian in order to ascertain whether or not he was planning to represent Plaintiff in proceedings relating to the dissolution of their marriage.

54.     Upon information and belief and during said telephone contact, Defendant also attempted to suggest that Plaintiff's mental health and emotional stability should be called into question.

55.     Plaintiff was forced to spend approximately nine hours at an Apple store in order to ensure Defendant was no longer able to access his iCloud account and the accounts related thereto or associated therewith.

56.     Upon information and belief, Apple will have electronic records indicating Defendant's unlawful access of Plaintiff's iCloud account, including but not limited to IP addresses, MAC addresses, timestamp information, and geolocation of the internet capable devices that were used to unlawfully access Plaintiff's iCloud account.

**Defendant's Unlawful Access of Plaintiff's American Express Account – October 2016**

57.     On or about October 12, 2016, at 3:41AM, Plaintiff received an email from American Express. *See* Exhibit Nos. 6, 7.

58.     The email's subject line read: "Confirmation of email address change." *Id.*

59.     The email informed Plaintiff a change had been made to the email address tied to his American Express account, switching the preferred email address for contact from dm@darshanmehta.com to d******x@gmail.com. *Id.*

60.     Plaintiff was unaware of any requests to change the email address tied to his American Express account until he received said email.

61.     Upon information and belief, the unknown email address referenced in said email, d******x@gmail.com, was Donald's email address, believed to be dwmaddox@gmail.com. *Id.*

62.     Upon information and belief Defendant, with the assistance of Donald, her co-conspirator, was responsible for the email change in Plaintiff's American Express account.

63.     Upon information and belief, Defendant unlawfully accessed Plaintiff's American Express account without the necessary authorization.

64.     Upon information and belief, American Express will have electronic records indicating Defendant's unlawful access of Plaintiff's American Express account, including but not limited to IP addresses, Macintosh addresses, timestamp information, and geolocation of the internet capable devices that MAC used to unlawfully access Plaintiff's American Express account.

//

//

//

**Defendant's Unlawful Access of Plaintiff's Other Accounts – October 2016**

65.     Upon information and belief, Defendant unlawfully accessed Plaintiff's United Airlines ["United"] account without the necessary authorization in or about October 2016. *See* Exhibit No. 8.

66.     Upon information and belief, United Airlines will have electronic records indicating Defendant's unlawful access of Plaintiff's United account, including but not limited to IP addresses, MAC addresses, timestamp information, and geolocation of the internet capable devices that were used to unlawfully access Plaintiff's United Airlines account.

67.     Upon information and belief, Defendant unlawfully accessed Plaintiff's Starwood account without the necessary authorization in or about October 2016.

68.     Upon information and belief, Starwood will have electronic records indicating Defendant's unlawful access of Plaintiff's Starwood account, including but not limited to IP addresses, MAC addresses, timestamp information, and geolocation of the internet capable devices that were used to unlawfully access Plaintiff's Starwood account.

**Defendant's Unlawful Access of Plaintiff's AT&T Account – November 2016**

69.     On or around November 26, 2016, at 2:51PM, Plaintiff received a text message from AT&T. *See* Exhibit No. 9.

70.     The text message referenced a change to the passcode associated with Plaintiff's AT&T account. *Id.*

71.     Plaintiff was unaware of any changes to the passcode associated with his AT&T account other than the change from a four-digit passcode to an eight-digit passcode he himself had made in October 2016, until he received said text message.

72.     Upon information and belief, Defendant was responsible for the November passcode change in Plaintiff's AT&T account.

73.     Upon information and belief, Defendant unlawfully accessed Plaintiff's AT&T account without the necessary authorization.

74.     Upon information and belief, and due to Plaintiff's actions changing the passcode associated with his AT&T account on or around October 2016, Defendant would have been forced to fraudulently impersonate Plaintiff in order to gain access to his AT&T account.

75.     Upon information and belief, on or around November 26, 2016, Defendant contacted AT&T and provided the company with the last four numbers of Plaintiff's Social Security number, as well as the Virginia address on Plaintiff's AT&T account statement, in order to fraudulently impersonate and prove her authority to access Plaintiff's AT&T account. *See* Exhibit No. 10.

76.     Upon information and belief and because of Defendant's lack of knowledge regarding Plaintiff's new eight-digit passcode for his AT&T account, Defendant requested that AT&T provide them with a temporary passcode at telephone number (301) 526-4343. *Id.*

77.     Telephone number (301) 526-4343 was one of many telephone numbers associated with Plaintiff's AT&T account, and a telephone number over which he had granted Defendant use during the course of their marriage. *See* Exhibit No. 6.

78.     Upon information and belief, because telephone number (301) 526-4343 was associated with Plaintiff's AT&T account, AT&T was willing to send a temporary passcode for Plaintiff's AT&T account to the number.

79.     Upon information and belief, Defendant used the temporary passcode for Plaintiff's AT&T account provided by AT&T to create a new, four-digit passcode, thereby depriving Plaintiff of access to his AT&T account. *See* Exhibit No. 10.

80.     Upon information and belief, after unlawfully and fraudulently taking control of Plaintiff's AT&T account, Defendant ported telephone number (301) 526-4343 from Plaintiff's AT&T account to a T-Mobile prepaid card. *Id.*

81.     Porting refers to the process whereby an individual switches a telephone number from one provider to another.

82.     Upon information and belief, after porting telephone number (301) 526-4343 from Plaintiff's AT&T account to a T-Mobile prepaid card, Defendant and Donald ported said number to Donald's AT&T account.

83.     After receiving the text message from AT&T about his account, Plaintiff contacted the company in order to ascertain the reason for the notification.

84.     AT&T informed Plaintiff that a request had been made to make a change on his AT&T account, and a temporary passcode has been sent to telephone number (301) 526-4343.

85.     Because Plaintiff was the owner of record for telephone number (301) 526-4343, AT&T advised him that said number could be ported back to Plaintiff's AT&T account if he were able to provide an account number and passcode from T-Mobile.

86.     With this guidance in mind, Plaintiff was forced to prove his identity and ownership of telephone number (301) 526-4343 at a T-Mobile store by showing staff a photo ID and a bill from his AT&T account.

87.     In response, T-Mobile provided Plaintiff with an account number and passcode.

88.     Subsequently, Plaintiff was forced to go to an AT&T store in order to port telephone number (301) 526-4343 back to his AT&T account.

89.     While at said store, Plaintiff was informed that telephone number (301) 526-4343 was again in AT&T's control, albeit associated with Donald's AT&T account.

90.     In light of this news, the AT&T representative assisting Plaintiff recommended that he contact the authorities.

91.     Upon information and belief, telephone number (301) 526-4343, over which Plaintiff claims rightful ownership and to which Plaintiff should have ultimate dispositive control, remains in the possession and under the control of Defendant.

92.     Upon information and belief, telephone number (301) 526-4343 remains linked to Donald's AT&T account, despite Plaintiff's rightful ownership.

93.     Upon information and belief, telephone number (301) 526-4343 continues to be used by Defendant, also despite Plaintiff's rightful ownership.

94.     Upon information and belief, both AT&T and T-Mobile will have electronic records indicating Defendant's unlawful access of Plaintiff's AT&T account and the subsequent porting of telephone number (301) 526-4343, including but not limited to logs of communications with Defendant, pre-paid subscriber identity/identification module ["SIM"] card purchase records, records of the porting of said number, customer service recordings, and other technical records demonstrating the aforementioned allegations.

**Defendant's Unlawful Access of Plaintiff's Vonage Account – November 2016**

95.     On or around November 26, 2016, at 9:09PM, Plaintiff received an email from Vonage. *See* Exhibit No. 11.

96.     The email referenced an attempted password change to Plaintiff's Vonage account that he was not aware of and had not initiated. *Id.*

97.     The email provided a link to a web page where Plaintiff would be allowed to change the password associated with his Vonage account. *Id.*

98.     Upon information and belief, Defendant was responsible for initiating a password change request to Plaintiff's Vonage account.

99.     Upon information and belief, Vonage will have electronic records indicating Defendant's unlawful access of Plaintiff's Vonage account, including but not limited to IP addresses, MAC addresses, timestamp information, and geolocation of the internet capable devices that were used to unlawfully access Plaintiff's Vonage account.

**Defendant's Potential Unlawful Access of Plaintiff's Additional Accounts**
**and Defendant's Potential Related Unlawful Acts**

100.     Upon information and belief and as alleged herein, Defendant unlawfully accessed many of Plaintiff's accounts.

101.     Plaintiff has not fully determined the extent of the unlawful access, but he intends to pursue discovery in order to ascertain the breadth of Defendant's unlawful acts.

102.     Upon information and belief, Defendant unlawfully accessed many of Plaintiff's accounts, without authorization, with the goal of collecting information that might prove beneficial to Defendant in any proceedings relating to the dissolution of her marital ties to Plaintiff.

103.     Upon information and belief, Defendant unlawfully accessed many of Plaintiff's accounts, with the aid of Donald, her co-conspirator, without authorization and deprived Plaintiff of access, with retribution against Plaintiff as a goal, largely because of negative feelings surrounding Plaintiff and Defendant's separation.

104.    Upon information and belief, Defendant was fully aware that her actions relating to Plaintiff's accounts would result in harm to Plaintiff.

105.    Upon information and belief, Defendant conspired together with Donald to access Plaintiff's accounts without authorization, and Defendant knew or should have known that the harm to Plaintiff would be the result.

### Responding to and Rectifying the Loss

106.    Plaintiff incurred substantial losses in responding to Defendant's unauthorized access of his accounts.

107.    Plaintiff spent a significant amount of time investigating where the offenders accessed the protected information, discovering the identities of the offenders, and investigating what information the offenders might be in possession of; a non-exhaustive list of Plaintiff's steps in uncovering and remedying these wrongs thus follows.

108.    On or about October 12, 2016, Plaintiff was forced to engage with law enforcement officers in both Oregon and Washington, D.C. in order to determine the person or circumstances behind the changes in his accounts. Plaintiff spoke with the individuals at the Newport, Oregon Sheriff's Office over the telephone multiple times, and with those at the District of Columbia Metropolitan Police Department both over the telephone and in person. Plaintiff believes the time he was required to spend pursuing these communications was five hours, which should be valued at $1,750. *See* Exhibit Nos. 3, 12.

109.    On or about October 12, 2016, Plaintiff was forced to engage with customer service representatives at entities including but not limited to AT&T, United, Starwood, Visa, American Express, and Vonage in order to determine the extent of the unlawful access that had occurred as well as its origin. Plaintiff spoke with customer service representatives or his direct contacts at

each of the aforementioned entities over the telephone, sometimes multiple times. Plaintiff believes the time he was required to spend pursuing these communications was three and one half hours, which should be valued at $1,225. *See* Exhibit No. 12.

110.    On or about the several days following October 12, 2016, Plaintiff was again forced to engage with law enforcement officers in Washington, D.C. Plaintiff spoke with individuals including a detective at the District of Columbia Metropolitan Police Department's Third District both over the telephone and in person. Plaintiff believes the time he was required to spend pursuing these communications was two and one half hours, which should be valued at $875. *Id.*

111.    On or about the several days following October 12, 2016, Plaintiff was forced to manage the server security for all domains registered to him, as he continued to investigate the breadth and depth of the unauthorized access and information security breach. Plaintiff's server's physical location is in the state of Texas. A password file Plaintiff maintained containing all of his passwords was on his server, which Plaintiff believes was likely compromised during the unauthorized access. Eventually, Plaintiff was forced to switch servers. Plaintiff believes the time he was required to spend pursuing these activities was three and one half hours, which should be valued at $1,225. *Id.*

112.    On or about October 12, 2016, and the following several days, Plaintiff was forced to remove and cancel the associated credit cards from his Apple devices due to the unauthorized access. Said credit cards included accounts with United as well as American Express, and some cards had to be cancelled and reordered multiple times due to account idiosyncrasies. Plaintiff believes the time he was required to spend pursuing these activities was six hours, which should be valued at $2,100. *See* Exhibit Nos. 12, 13.

113.    On or about October 12, 2016, and the following several days, Plaintiff was forced to assess and adjust the security of all airline, hotel, and car rental accounts he utilized, in order to determine the extent of the unauthorized access and prevent any further occurrences of unauthorized access. Said accounts were with entities including but not limited to United and Starwood. Plaintiff believes the time he was required to spend pursuing these activities was two and one half hours, which should be valued at $875. *See* Exhibit No. 12.

114.    On or about October 12, 2016, and the following several days, Plaintiff was forced to change the Wi-Fi configuration and access for his tenants living in the lower level of 2010 Hillyer Place, Washington, D.C. due to the unauthorized access and security breach. Plaintiff believes the time he was required to spend pursuing this activity was two hours, which should be valued at $700. *Id.*

115.    On or about October 12, 2016, Plaintiff was forced to visit the AT&T store in Arlington, Virginia, due to the unauthorized access to his Apple products and accounts and his belief that the unauthorized access included tracking his physical whereabouts as well as his communications. Plaintiff purchased a pre-paid mobile telephone with cash, in the amount of one hundred dollars in order to communicate freely and without the likelihood of any "eavesdroppers." Plaintiff believes the time he was required to spend pursuing this activity was one and one half hours, which should be valued at $525. *Id.*

116.    On or about October 14, 2016, Plaintiff was forced to investigate the capabilities, functionality, settings, and security options for his Apple accounts and devices. Plaintiff's activities in this endeavor included but were not limited to resetting his Apple ID security questions. Plaintiff believes the time he was required to spend pursuing these activities was two and one quarter hours, which should be valued at $787.50. *See* Exhibit Nos. 12 - 15.

117.    On or about October 16, 2016, Plaintiff was forced to visit and spend the better part of the day at an Apple retail store in Tysons Corner. Plaintiff's visit included dealing with security issues related to his Apple products and accounts, including his laptop, iPad, and iPhone. Plaintiff believes the time he was required to spend pursuing this activity was eight and one half hours, which should be valued at $2,975. *Id.*

118.    On or about October 21, 2016, Plaintiff was forced to update the security on his AT&T account due to the unauthorized access, including to update his password and passcode. Plaintiff believes the time he was required to spend pursuing this and related activities was one and three quarters of an hour, which should be valued at $612.50. *See* Exhibit No. 12.

119.    In or around October 2016, Plaintiff was again forced to engage with District of Columbia Metropolitan Police Department officers, including a detective and a sergeant, on two separate occasions, in order to discuss the need for a police report regarding the unauthorized access and the feasibility of reporting the unauthorized access to security officers with GWU, among other things. In total, Plaintiff believes the time he was required to spend pursuing these communications was four hours, which should be valued at $1,400. *Id.*

120.    On or about November 2, 2016, Plaintiff was forced to visit the GWU campus in Washington, D.C. to deal with his compromised GWU email account, as well as engage in email communications with GWU's IT department. Plaintiff believes the time he was required to spend pursuing these activities was two and one half hours, which should be valued at $875. *See* Exhibit Nos. 5, 12.

121.    In or around November 2016, Plaintiff was forced to visit both a T-Mobile and an AT&T retail location due to the second incident of unauthorized access of his AT&T account and the subsequent porting of telephone number (301) 526-4343. Plaintiff made multiple phone calls

and spoke with numerous individuals at both retail stores. Plaintiff believes the amount of time he was required to spend pursuing these activities was six and one half hours, which should be valued at $2,275. *See* Exhibit No. 12.

122.    In or around November 2016, Plaintiff was forced to research and interview attorneys for the present litigation, as he was unable to stop the continuing unauthorized accesses of his accounts, he was still unaware of the depth and breadth of the unauthorized access, and he had been deprived of control of telephone number (301) 526-4343. In total, Plaintiff believes the amount of time he was required to spend pursuing these activities was nine and one half hours, which should be valued at $3,325. *Id.*

123.    In or around November 2016, Plaintiff was forced to have a telephone conversation with undersigned counsel, Attorney Eric J. Menhart ["Attorney Menhart"], in order to explain the details of the unauthorized access and the surrounding circumstances, so that Attorney Menhart might be able to gauge the merits of Plaintiff's claims and provide Plaintiff with legal advice. Plaintiff believes the amount of time he was required to spend pursuing this activity was one hour, which should be valued at $350. *Id.*

124.    In or around November and December of 2016, Plaintiff was forced to compose a detailed memorandum containing the details of the unauthorized access and the surrounding circumstances and compiling the exhibits upon which Plaintiff's claims would later rest. Plaintiff believes the amount of time he was required to spend pursuing this activity was nine hours, which should be valued at $3,150. *Id.*

125.    Plaintiff was forced to spend, at minimum, seventy-one and one half hours investigating and uncovering the details of the unauthorized access into his accounts. *Id.*

126.    Plaintiff has substantial amounts of education, business experience, and associated talent.

127.    Plaintiff has twenty-five years of branding and marketing strategy experience, has pioneered several technologies, and has maintained leadership roles in corporations.

128.    Plaintiff believes the market rate for his skills to be $350 per hour, and is prepared to demonstrate at trial that the claimed rate is reasonable. *See* Exhibit No. 16.

129.    Defendant's actions required Plaintiff to forego the opportunity to be paid $350 per hour for seventy-one and one half hours, such that they resulted in Plaintiff being required to investigate and uncover the details of the unauthorized access in order to stop it and remedy it.

130.    Plaintiff believes that the damages incurred due to Defendant's actions is, at minimum, twenty five thousand twenty five dollars ($25,025).

131.    In addition, Plaintiff's out-of-pocket expenses in responding to Defendant's actions includes but is not limited to $100.00 for the purchase of a prepaid Samsung phone from AT&T, due to the fact that his accounts with Apple were compromised.

132.    Therefore, Plaintiff's damages are, at minimum, and in total, twenty five thousand one hundred and twenty five dollars ($25,125).

## PLAINTIFF'S CLAIMS

### First Claim
### [Violation of Computer Fraud and Abuse Act – 18 U.S.C. § 1030 *et seq.*]

133.    Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

134.    18 U.S.C. § 1030(a)(2)(C) provides that "Whoever…intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains…information from any protected computer…shall be punished as provided in subsection (c) of this section.

135.    18 U.S.C. § 1030(a)(4) provides that "Whoever…knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value…shall be punished as provided in subsection (c) of this section.

136.    18 U.S.C. § 1030(e)(2)(B) defines the term "protected computer" to mean "a computer which is used in or affecting interstate or foreign commerce or communication…"

137.    Plaintiff's computer and related digital accounts are used in and affect interstate commerce and/or communication. Plaintiff regularly accesses websites, sends emails, and undertakes similar actions from his computer.

138.    Plaintiff's wireless phone is used in and affects interstate commerce and/or communication. Plaintiff regularly accesses websites, sends emails, and more from his wireless phone.

139.    In the present matter, Defendant intentionally accessed many of Plaintiff's protected computers and online service accounts secretly and without Plaintiff's authorization.

140.    Through the unauthorized access, Defendant obtained information, including but not limited to, information contained in Plaintiff's emails, phone calls, text messages, and other personal communications.

141.    Additionally, upon information and belief, Defendant accessed Plaintiff's computer knowingly and with the intent to defraud.

142.    Furthermore, by means of the unauthorized access, Defendant furthered her fraud and obtained something of value, namely Plaintiff's personal information and communications, which were used to benefit Defendant.

143.    Defendant's actions created a "loss to 1 or more persons during any 1-year period . . . aggregating at least $ 5,000 in value." 18 U.S.C. § 1030(c)(2)(B)(i), (ii), and (iii).

144.    Loss is defined in the CFAA as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring . . . the system . . . to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

145.    Plaintiff incurred substantial losses in responding to Defendant's offenses.[1]

146.    First, Plaintiff incurred many hours of valuable time away from day-to-day responsibilities in attempting to determine the source of the computer breach and undertaking to discover the responsible parties, which had a value of more than $5,000.

147.    Among other things, Plaintiff reviewed security notices from his account providers, access logs on his various accounts, made phone calls to vendors, and otherwise assessed the damage to his accounts and computer equipment.

148.    Second, Plaintiff incurred attorney's fees in filing the instant case, in excess of $5,000. Plaintiff had to file the case to obtain third party discovery, available only via subpoena power, to determine the extent of the damages. Plaintiff is not a licensed attorney. Professional fees paid to Plaintiff's attorneys already exceed $5,000.

149.    Third, Plaintiff incurred other identifiable costs, personally and via his attorneys, such as court filing fees, money transfer/wire fees, service of process charges, charges incurred to

---

[1] "Where the offender has accessed protected information, discovering who has that information and what information he or she has is essential to remedying the harm. In such cases courts have considered the cost of discovering the identity of the offender or the method by which the offender accessed the protected information to be part of the loss for purposes of the CFAA." *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 981 (N.D. Cal. 2008) (*citing Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 2008 U.S. Dist. LEXIS 15329, *2-3 (D. Ariz.).

access research resources, telephone charges, and numerous other costs, that have combined to an amount in excess of $5,000 in combating Defendant's violations. All such costs were reasonably necessary in "responding to" the CFAA offense.

150.    Each loss alleged herein occurred within a one year period, from October 9, 2016 to the present date.

## <u>Second Claim</u>
### [Violation of Stored Communications Abuse Act – 18 U.S.C. § 2701 *et seq.*]

151.    Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

152.    18 U.S.C. § 2701 provides that "[W]hoever…intentionally accesses without authorization a facility through which an electronic communication service is provided…and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

153.    18 U.S.C. § 2707(a) provides that "[A]ny provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity…which engaged in that violation such relief as may be appropriate.

154.    18 U.S.C. § 2707(b) provides that "In a civil action under this section, appropriate relief includes (1) such preliminary and other equitable or declaratory relief as may be appropriate; (2) damages under subsection (c); and (3) a reasonable attorney's fee and other litigation costs reasonably incurred."

155.    Defendant intentionally accessed Plaintiff's email server and iCloud account, which both constitute "a facility through which an electronic communication service is provided."[2] Defendant did so without Plaintiff's authorization.

156.    Through the aforementioned access, Defendant obtained access to Plaintiff's emails, or electronic communications, while they were in electronic storage on a server.

157.    Notably, all of the emails and text messages contained in Plaintiff's email accounts were electronically stored on servers for purposes of backing up the messages, making such messages readily accessible to Plaintiff on the electronic server facility.

158.    Plaintiff relied upon the backups of the messages for purposes of accessing the messages on demand.

159.    Moreover, despite opportunity to delete the emails and messages in his account, Plaintiff did not do so, because he intended to retain and backup messages that had previously been transmitted for purposes of accessing such messages at a later time.

160.    Prior to being held in electronic storage, each email unlawfully accessed by Defendant had been transmitted via the Internet, in interstate commerce.

161.    Upon information and belief, Defendant accessed numerous emails and messages in Plaintiff's accounts.

162.    Defendant also intentionally accessed Plaintiff's Vonage, AT&T and other accounts. Defendant did so without Plaintiff's authorization.

---

[2] Reviewing courts largely agree that email stored on a server are contemplated and actionable under the SCA. *See e.g. Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004).

163.     Through the aforementioned access, Defendant obtained access to Plaintiff's phone records, text messages, and other communication information, while they were in electronic storage on a server.[3]

164.     Notably, all of the phone records and text messages contained in Plaintiff's accounts were electronically stored on servers for purposes of backing up the records and messages, making such messages readily accessible to Plaintiff on the electronic server facility.

165.     Plaintiff relied upon the backups of the messages for purposes of accessing the records and messages on demand.

166.     Moreover, despite opportunity to delete the phone records and messages in his account, Plaintiff did not do so, because he intended to retain and backup messages that had previously been transmitted for purposes of accessing such messages at a later time.

167.     Prior to being held in electronic storage, each email unlawfully accessed by Defendant had been transmitted via the Internet or an interconnected telephone network, in interstate commerce.

168.     Upon information and belief, Defendant accessed numerous messages in Plaintiff's accounts.

169.     Plaintiff incurred actual damages by the illicit access because Plaintiff was forced to incur damages in time invested, software purchases to track and prevent future access, and more, as previously set forth herein.

170.     Plaintiff incurred costs in bringing this lawsuit, as well, as alleged herein.

---

[3] *See Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 901 (9th Cir. 2008) ("By archiving the text messages on its server, Arch Wireless certainly was 'storing' the messages.")

171.    Defendant is liable for actual damages or statutory damages for each of the emails accessed, pursuant to § 2707(c).

### Third Claim
### [District of Columbia Common Law Civil Conspiracy]

172.    Plaintiff incorporates each of the foregoing allegations as if set forth fully herein.

173.    The District of Columbia recognizes, at common law, the tort of civil conspiracy.[4]

174.    Civil conspiracy consists of (1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme.

175.    In the present matter, Defendant and Donald acted together pursuant to an agreement, either express or implied, to access Plaintiff's accounts without authorization.

176.    The purpose of the agreement was to engage in the unlawful act of accessing Plaintiff's various accounts without authorization, as explained herein.

177.    By virtue of their overt acts of unlawfully accessing Plaintiff's accounts, Defendant and Donald have caused injury to Plaintiff, including, but not limited to, substantial damages and costs through and in responding to the offenses.

178.    Defendant and Donald's overt acts of unlawfully accessing Plaintiff's accounts were carried out pursuant to, and in furtherance of, the common scheme of obtaining control of Plaintiff's accounts, and thereby gaining access to Plaintiff's personal information and preventing Plaintiff from being able to access his accounts.

---

[4] *See e.g. Halberstam v. Welch*, 227 U.S. App. D.C. 167, 172, 705 F.2d 472, 477 (1983); *Griva v. Davison*, 637 A.2d 830, 848 (D.C. 1994); *Weishapl v. Sowers*, 771 A.2d 1014, 1023-24 (D.C. 2001)

179.    Defendant is accordingly liable under the tort of civil conspiracy.

**Fourth Claim**
**[District of Columbia Common Law Fraud]**

180.    Plaintiff incorporates each of the foregoing allegations as if set forth fully herein.

181.    The District of Columbia recognizes, at common law, the tort of fraud.

182.    In the District of Columbia, the elements of actual fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation.[5]

183.    In the present matter, Defendant, with the aid of Donald, engaged in many different false representations.

184.    Among other things, Defendant and/or Donald, her co-conspirator, falsely represented themselves as authorized users to various computers, customer service agents, and others in their unlawful accessing of Plaintiff's accounts.

185.    Each of the misrepresentations was material, because each false representation played a pivotal role in allowing the Defendant and/or Donald to access the various email and electronic accounts.

186.    Each false representation was made with knowledge of its falsity, because both Defendant and Donald knew that neither was an authorized user of any of the accounts.

187.    Each false representation was made with an intent to deceive, to allow the Defendant to access accounts and information that she otherwise did not have a right to view.

188.    Action was taken in reliance upon the false representations. For example, the various computer systems accepted the credentials entered by Defendant and/or Donald into the

---

[5] See e.g. *Bennett v. Kiggins*, 377 A.2d 57, 59-60 (D.C. 1977); *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1074 n.22 (D.C. 2008)

systems, and the machines provided access to Defendant and/or Donald as a result. In other instances, customer service agents relied upon false representations presented by the Defendant and/or Donald and relied upon such misrepresentations in granting access to Plaintiff's accounts.

189.     Plaintiff incurred substantial damages and costs through and in responding to Defendant's fraudulent actions.

190.     Defendant is accordingly liable under the tort of fraud.

## Fifth Claim
### [District of Columbia Common Law Civil Trespass]

191.     Plaintiff incorporates each of the foregoing allegations as if set forth fully herein.

192.     The District of Columbia recognizes, at common law, the tort of trespass.

193.     A trespass is an unauthorized entry onto property which results in interference with the property owner's possessory interest therein.

194.     In order to maintain a cause of action for trespass to land, the plaintiff must demonstrate the present right to control the property, including the right to exclude others, at the time the trespass was committed. In addition, to recover for trespass to land, a plaintiff must prove an invasion that interfered with the right of exclusive possession of the land, and that was a direct result of some act committed by the defendant. [6]

195.     In the present matter, Plaintiff had exclusive possession of the property, namely each of his applicable electronic accounts, and the information, data and intellectual property that was stored therein.

---

[6] *See e.g. Carrigan v. Purkiser*, 466 A.2d 1243, 1243 (D.C. 1983); *Fortune v. United States*, 570 A.2d 809, 811 (D.C. 1990); *Sarete, Inc. v. 1344 U St. Ltd. P'ship*, 871 A.2d 480, 490 (D.C. 2005).

196.    Plaintiff had actual possession of the property, because the materials contained in the accounts were contained in backups on servers, as well as in local copies of the same on Plaintiff's electronic devices, that only Plaintiff could access.

197.    In the alternative, Plaintiff had constructive possession of the accounts, because he was the only person that had usernames, passwords, or authorization to access the accounts.

198.    Plaintiff's possession, whether actual or constructive, was valid at the time of each of the unauthorized accesses described herein.

199.    There was an invasion that interfered with Plaintiff's exclusive possession of his property, namely the Defendant's fraudulent conduct described herein.

200.    Each time the Defendant accessed one of Plaintiff's electronic accounts, such act constituted a separate instance of trespass.

201.    Each instance of trespass deprived Plaintiff of his exclusive rights over his property.

202.    Each trespass was the direct result of an intentional act committed by the Defendant and/or Donald, her co-conspirator.

203.    As described herein, the unauthorized accesses to each of the electronic accounts were acts undertaken intentionally by Defendant for purposes of acquiring possession of Plaintiff's electronic accounts.

204.    Plaintiff incurred substantial damages and costs through and in responding to Defendant's offenses.

205.    Defendant is accordingly liable under the tort of trespass.

### Sixth Claim
**[District of Columbia Common Law Invasion of Privacy]**

206.    Plaintiff incorporates each of the foregoing allegations as if set forth fully herein.

207.    The District of Columbia recognizes, at common law, torts of Invasion of Privacy.

208.    In the District of Columbia, the elements of invasion of privacy by intrusion upon seclusion are: (1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination, (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns; (3) that would be highly offensive to an ordinary, reasonable person.[7]

209.    Additionally, invasion of privacy by misappropriation of name or likeness occurs when one appropriates to his own use or benefit the name or likeness of another.[8]

210.    In the present matter, Defendant, with the aid of Donald, her co-conspirator, invaded and interfered with Plaintiff's applicable electronic accounts by physical intrusion, by use of a defendant's sense of sight or hearing, and/or by use of other forms of investigation or examination.

211.    The accounts that Defendant unlawfully accessed contained Plaintiff's private and/or secret concerns, including private financial, personal, and business information.

212.    Defendant's intrusions into Plaintiff's accounts as described herein would be highly offensive to an ordinary, reasonable person.

213.    Additionally, or alternatively, Defendant, with the aid of Donald, appropriated Plaintiff's name and likeness in representing herself as Plaintiff to various computer systems, customer service agents, and others for her own use or benefit, namely, to access Plaintiff's personal information contained in his accounts and to prevent Plaintiff from being able to access his information.

---

[7] See e.g. *Wolf v. Regardie*, 553 A.2d 1213, 1217 (D.C. 1989); Restatement (Second) of Torts, § 652B.
[8] See e.g. *Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33, 55 (D.D.C. 2010); *Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 587 (D.C. 1985); Restatement (Second) of Torts, § 652C.

214.    Plaintiff incurred substantial damages and costs through and in responding to Defendant's invasions of his privacy.

215.    Defendant is accordingly liable under the torts of invasion of privacy by intrusion upon seclusion and/or misappropriation of Plaintiff's name or likeness.

## PRAYER FOR RELIEF

Wherefore, Plaintiff seeks the following relief:

1.    An award for damages, in an amount not less than one hundred thousand dollars ($100,000), in an amount to be proven at trial;

2.    An award of all economic, statutory, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct, and if her conduct is proven willful, award Plaintiff exemplary damages;

3.    Disgorgement or restitution by Defendant of all revenue earned from the fraudulent and unlawful practices described herein;

4.    An award of punitive damages, in an amount to be proven at trial;

5.    An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff, including an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

6.    An award to Plaintiff of reasonable litigation expenses and attorneys' fees;

7.    An award to Plaintiff of pre-judgment and post-judgment interest, to the extent allowable; and

8.    Such further relief as this Court may deem just and proper.

//

//

## JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury with respect to each claim in this Complaint.


Respectfully submitted,

/s/ Eric Menhart
Eric Menhart, Esq.
Lexero Law
316 F St NE Suite 101
Washington, DC 20002
Phone: 855-453-9376
Fax: 855-453-9376